**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**
**EAST ST. LOUIS DIVISION**

| | |
|---|---|
| KIMBERLY AND NATHAN CASEROTTI, | CIVIL COMPLAINT |
| Plaintiffs, | |
| | CASE NO. 3:25-cv-01026 |
| v. | |
| BURNETTE LEGAL GROUP, LLC d/b/a | DEMAND FOR JURY TRIAL |
| MONARCH LEGAL GROUP, | |
| Defendant. | |

## DEMAND FOR ARBITRATION

**NOW COMES** KIMBERLY AND NATHAN CASEROTTI ("Plaintiffs") by and through the undersigned counsel, complaining as to the conduct of BURNETTE LEGAL GROUP, LLC d/b/a MONARCH LEGAL GROUP ("Defendant") as follows:

### NATURE OF THE ACTION

1.      Plaintiffs bring this action seeking redress for violations of the Credit Repair Organizations Act ("CROA"), pursuant to 15 U.S.C. § 1679, the Illinois Credit Services Organizations Act ("ICSOA"), pursuant to 815 ILCS 605/1, the Illinois Debt Settlement Consumer Protection Act ("IDSCPA"), pursuant to 225 ILCS 429/1, the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), pursuant to 815 ILCS 505/1, fraud, negligent misrepresentation, legal malpractice, breach of contract, and breach of fiduciary duty stemming from Defendant's unlawful conduct.

### PARTIES

2.      Plaintiffs are natural persons and consumers, over 18 years of age, residing in Collinsville, Illinois.

1

3.      Defendant is, upon information and belief, a credit repair organization, debt settlement provider, and law firm that offers the consumers the ability to improve their credit by entering into a program whereby Defendant seeks to improve its clients' credit history by resolving debts that would otherwise go unresolved. Defendant is a limited liability company organized under the laws of the state of Illinois with its principal place of business located at 211 West Wacker Drive, Unit 900B, Chicago, IL 60606.

4.      Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives and insurers at all times relevant to the instant action.

### FACTS SUPPORTING CAUSES OF ACTION

5.      In June 2021, Plaintiffs were facing financial hardship.

6.      Due to the financial hardship, Plaintiffs were unable to keep up with their mounting debt.

7.      Accordingly, Plaintiffs began looking for debt relief companies that could assist them in resolving their debt and improving their credit.

8.      Plaintiffs ultimately found Defendant through their search and contacted Defendant to inquire about Defendant's services.

9.      During a call with Defendant's agent, the agent represented to Plaintiffs that it would be able to: (1) resolve Plaintiffs' financial obligations for a significant discount by negotiating with Plaintiffs' creditors; and (2) improve Plaintiffs' credit scores.

10.      Defendant further represented to Plaintiffs that all they would need to do is make monthly payments over a certain period of time and that Defendant would utilize the payments to expeditiously resolve Plaintiffs' enrolled debts.

11.     On June 24, 2023, having relied on Defendant's representations, Plaintiffs formally enrolled various debts into Defendant's debt settlement program by entering into a contract with Defendant for legal and debt resolution services.

12.     Specifically, Plaintiffs enrolled a total debt amount of approximately $103,899 across 7 accounts.

13.     Pursuant to the contract, Plaintiffs were obligated to make monthly payments of approximately $1,417.30 over the course of 54 months. However, as time progressed, Respondent adjusted Plaintiffs' monthly payments to a revised payment of $1,817.70.

14.     Upon information and belief, $150.00 of Plaintiffs' monthly payments went towards Respondent's "retainer fee," prior to Respondent performing any work for Plaintiffs.

15.     Further, $944.54 of Plaintiffs' payments went towards "service costs," which were associated with non-legal services being offered by Respondent and which represented 20% of the total of Plaintiffs' enrolled debts – regardless of whether Respondent had settled any of Plaintiffs' enrolled debts or fully performed any services it agreed to perform for Plaintiffs.

16.     Plaintiffs proceeded to make their monthly payments to Defendant in a timely manner.

17.     During the enrollment period, Plaintiffs were repeatedly assured that Defendant was actively communicating with their enrolled creditors and that settlements would soon be reached.

18.     Despite Defendant's assurances, Defendant failed to resolve Plaintiffs' debts as expeditiously as Defendant represented it would.

19.     Despite Defendant's representations, Plaintiffs' credit scores did not improve during the enrollment period.

20.    Plaintiffs signed up for Defendant's debt settlement and credit improvement services based on its representations that it would negotiate and settle their outstanding debts and improve their credit.

21.    Throughout its dealings with Plaintiffs, Defendant deceptively and misleadingly strung Plaintiffs along, telling them what they wanted to hear in order for them to keep making payments, only to turn around and fail to deliver on the promises and representations that induced Plaintiffs' continued participation in Defendant's debt settlement program.

22.    Furthermore, Defendant repeatedly informed Plaintiffs that it was working on negotiating settlements with their creditors on their behalf.

23.    However, Defendant chronically failed to engage the vast majority of Plaintiffs' creditors in settlement discussions, which resulted in Plaintiffs' creditors hounding Plaintiffs for payments.

24.    In April 2024, Plaintiffs received a letter revealing that they were being sued by Discover. It was revealed to Plaintiffs that there were 3 inactive payment plans, shedding light on Respondent's interactions with Plaintiffs' creditors.

25.    Faced with a lawsuit from Discover, Plaintiffs took matters into their own hands, settling one enrolled account for around $17,630, as Respondent failed to provide the promised legal representation.

26.    Similarly, Plaintiffs faced another legal challenge when they were sued by Blitt & Gaines PC, for approximately $17,000. Despite Respondent's assurance of legal representation, no attorney was provided to Plaintiffs, as they were forced to see counsel outside of Respondent's program

27.    Despite Plaintiffs paying a significant sum of money into Defendant's program, Defendant failed to meaningfully (1) engage Plaintiffs' creditors in settlement discussion; (2) resolve any of Plaintiffs' debts, or (3) improve Plaintiffs' credit scores.

28.    As a result of Defendant's inaction, Plaintiffs' creditors continued to hound Plaintiffs through harassing collection calls and other collection activity.

29.    After regularly making monthly payments of approximately $460, Plaintiffs were frustrated to learn that Defendant had failed to resolve any of their accounts.

30.    Fed up with Defendant's ineffective and fraudulent services, Plaintiffs ultimately canceled Defendant's services.

31.    Plaintiffs suffered significant damages as result of Defendant's misrepresentations and omissions, including: financial losses, increased debt due to interest that accrued on the enrolled debt, emotional distress, mental anguish, decreased credit score, and deprivation of the money that Plaintiffs paid into Defendant's program.

32.    Simply put, Plaintiffs found themselves in a much worse financial position after enrolling in Defendant's "debt settlement" program.

### COUNT I – VIOLATIONS OF THE CREDIT REPAIR ORGANIZATIONS ACT

33.    Plaintiffs repeat and reallege all preceding paragraphs as though fully set forth herein.

34.    Plaintiffs are "consumers" as defined by 15 U.S.C. § 1679a(1) of the CROA.

35.    Defendant is both a "credit repair organization" as defined by §1679a(3) of the CROA, as it is a person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of improving a consumer's credit, credit

history, or credit rating, or providing assistance to any consumer with regard to any activity or service for the purpose of improving a consumer's credit.

      a.     **Violations of CROA § 1679b(a)**

36.    The CROA, pursuant to 15 U.S.C. § 1679b(a)(3) prohibits any person from "mak[ing] or us[ing] any untrue or misleading representation of the services of the credit repair organization." Additionally, pursuant to 15 U.S.C. § 1679b(a)(4), any person is prohibited from "engag[ing], directly or indirectly, in any act, practice, or course of business that constitutes or results in the commission of, or an attempt to commit, a fraud or deception on any person in connection with the offer or sale of the services of the credit repair organization."

37.    Defendant violated the above referenced provisions of the CROA through its misrepresentations and deception as to the nature of the credit repair and debt management services it could provide Plaintiffs. In order to get Plaintiffs to agree to utilize Defendant's services, Defendant represented that its services would increase Plaintiffs' credit rating by managing all of Plaintiffs' enrolled debts and pay off their creditors through their monthly payments; however, Defendant completely failed to follow through on these promises or the services it represented it would perform for Plaintiffs. Upon inquiring about their accounts, Plaintiffs would be given the run around.

38.    Further, Defendant violated the CROA through the deceptive nature of its billing practices. Upon information and belief, Defendant improperly charges consumers fees, which are placed in an escrow account from which Defendant would be able to resolve enrolled obligations, which in turn forces consumers into longer periods, or higher amounts, of payments due to Defendant's improperly draining funds that should otherwise go towards resolving enrolled obligations. Defendant's unlawful billing practices constitutes a fraud designed to

extract payments from consumers beyond that which Defendant originally represents in its initial meeting with consumers.

**b.    Violations of CROA § 1679b(b) and (a)(4)**

39.    Section 1679b(a)(3) of the CROA prohibits any person from "mak[ing] or us[ing] any untrue or misleading representation of the services of the credit repair organization."

40.    Additionally, Section 1679b(a)(4) of the CROA, prohibits any person from "engag[ing], directly or indirectly, in any act, practice, or course of business that constitutes or results in the commission of, or an attempt to commit, a fraud or deception on any person in connection with the offer or sale of the services of the credit repair organization."

41.    Defendant violated §§ 1679b(a)(3) and (4) by, *inter alia*, (1) failing to pay Plaintiffs' creditors with the funds that Plaintiffs paid into the debt settlement program; (2) failing to provide debt settlement services that it was contractually obligated to provide; (3) failing to promptly communicate with Plaintiffs' creditors in an effort resolve Plaintiffs' debts; (4) failing to resolve any of Plaintiffs' debts or improve Plaintiffs' credit score; and (5) putting its financial interests ahead of Plaintiffs' interests.

**c.    Violations of CROA § 1679c**

42.    Section 1679b(b) of CROA provides:

No credit repair organization may charge or receive any money or other valuable consideration for the performance of any service which the credit repair organization has agreed to perform for any consumer before such service is fully performed.

43.    Defendant violated §1679b(b) of CROA by charging Plaintiffs for services prior to fully performing the services (resolving Plaintiffs' debts or improving Plaintiffs' credit scores).

**d.    Violations of CROA § 1679d**

44.    The CROA, pursuant to 15 U.S.C. § 1679d, outlines various requirements for the contracts between credit repair organizations and consumers, including "a conspicuous statement in bold face type, in immediate proximity to the space reserved for the consumer's signature on the contract, which reads as follows: 'You may cancel this contract without penalty or obligation at any time before midnight of the 3rd business day after the date on which you signed the contract. See the attached notice of cancellation form for an explanation of this right.'" 15 U.S.C. § 1679d(b)(4).

45.    Defendant violated § 1692d(b)(4) of the CROA through its failure to contain the required disclosure in boldface type in immediate proximity for the place reserved for Plaintiffs' signature on the contract.

46.    As alleged above, Plaintiffs were harmed by Defendant's conduct.

**WHEREFORE**, Plaintiffs respectfully request the following relief:

a.    Declaring that the practices complained of herein are unlawful and violate the aforementioned bodies of law;

b.    Awarding Plaintiffs' actual damages to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(1);

c.    Awarding Plaintiffs punitive damages, in an amount to be determined at trial, as provided under 15 U.S.C. § 1679g(a)(2)(A);

d.    Awarding Plaintiffs costs and reasonable attorney fees as provided under 15 U.S.C. § 1679g(a)(3); and

e.    Awarding any other relief as the Honorable Court deems just and appropriate.

COUNT II – VIOLATIONS OF THE ILLINOIS CREDIT SERVICES ORGANIZATION ACT

47.     Plaintiffs repeat and reallege all preceding paragraphs as though fully set forth herein.

48.     Plaintiffs are "Buyer[s]" as defined by 815 ILCS 605/3(a).

49.     Defendant is a "Credit Services Organization" as defined by 815 ILCS 605/3(d).

50.     The carve out for attorneys in the ICSOA does not apply to Defendant because the services, or lack thereof, were not within the scope and course of its practice as an attorney.

**a.     Violation of ICSOA – 815 ILCS 605/5(1)**

51.     The ICSOA, pursuant to 815 ILCS 605/5(1), prohibits a credit services organization from charging or receiving "any money or other valuable consideration prior to full and complete performance of the services the credit services organization has agreed to perform for or on behalf of the buyer . . . ."

52.     Defendant violated 815 ICLS 605/5(1) in much the same way it violated 15 U.S.C. § 1692b(b) outlined above.

**b.     Violation of ICSOA – 815 ILCS 605/5(4)**

53.     The ICSOA, pursuant to 815 ILCS 605/5(4), prohibits a credit services organization from "[m]ak[ing[ or us[ing] any untrue or misleading representations in the offer or sale of the services of a credit services organization or engage, directly and indirectly, in any act, practice, or course of business intended to defraud or deceive a buyer in connection with the offer or sale of such services; including but not limited to: . . . the qualifications, training or experience of its personnel; or the amount of credit improvement the consumer can expect to receive as a result of the services."

9

54.     Defendant violated 815 ILCS 605/5(4) through the same conduct that violates 15 U.S.C. § 1679b(a)(3)-(4) outlined above.

**c.     Violations of ICSOA – 815 ILCS 605/6**

55.     The ICSOA, pursuant to 815 ILCS 605/6, outlines the requirements for certain disclosures to be provided to consumers, including various pieces of information regarding the right to proceed against a surety bond.

56.     Defendant violated 815 ILCS 605/6 through its failures to comply with the Illinois requirements for credit repair contracts.

**d.     Violations of ICSOA – 815 ILCS 605/7**

57.     The ICSOA, pursuant to 815 ILCS 605/7 outlines a number of requirements for contracts between credit services organizations and buyers.

58.     Defendant violated the above portions of the ICSOA through its failure to provide the requisite information and disclosures in the manner required under the ICSOA.

**e.     Violations of ICSOA – 815 ILCS 605/8**

59.     The ICSOA, pursuant to 815 ILCS 605/8, provides that any contract contrary to the terms of the ICSOA shall be void and unenforceable, and similarly constitutes a violation of the ICSOA.

60.     Defendant violated the above portion of the ICSOA in much the same way it violated § 1679f.

**WHEREFORE**, Plaintiffs respectfully request the following relief:

a.     Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b.     Awarding Plaintiffs actual damages pursuant to 815 ILCS 605/11;

c.      Awarding Plaintiffs punitive damages pursuant to 815 ILCS 605/11;

d.      Awarding Plaintiffs' costs and reasonable attorney fees, pursuant to 815 ILCS 605/11; and,

e.      Awarding any other relief the Honorable Court deems just and appropriate.

## COUNT III – VIOLATIONS OF THE ILLINOIS DEBT SETTLEMENT CONSUMER PROTECTION ACT

61.     Plaintiffs repeat and reallege all preceding paragraphs as though fully set forth herein.

62.     Plaintiffs are "consumer[s]" as defined by 225 ILCS 429/10.

63.     Defendant is a "debt settlement provider" as defined by 225 ILCS 429/10.

64.     The exemptions from the IDSCA for attorneys licensed to practice law in Illinois are not applicable to Defendant as Defendant was not "engaged in the practice of law" in relation with its dealings with Plaintiffs. Defendant categorized its debt settlement services as being non-legal in nature, and upon information and belief any negotiation services performed were not done by any attorneys employed by Defendant but instead non-attorney customer service representatives of Defendant and/or third parties.

**a.      Violations of 225 ILCS 429/120**

65.     The IDSCPA, pursuant to 225 ILCS 429/10, outlines the nature of the required information debt settlement providers must provide in their contracts with consumers.

66.     Defendant violated 225 ILCS 429/10 through its failure to provide the extent of requisite information required to be provided in its contracts with consumers.

**b.      Violations of 225 ILCS 429/125**

67.     The IDSCPA, pursuant to 225 ILCS 429/125, outlines the nature of fees to be charged by debt settlement providers.

68.     Defendant violated 225 ILCS 429/125 through the nature of its billing practices.

**c.     Violations of 225 ILCS 429/140**

69.     The IDSCPA, pursuant to 225 ILCS 429/140, provides that "[a] debt settlement provider shall act in good faith in all matters under this Act."

70.     Defendant violated the above provision of the IDSCPA through its failure to act in good faith at all times in its relations and dealings with Plaintiffs.

**d.     Violations of 225 ILCS 429/145**

71.     The IDSCPA, pursuant to 225 ILCS 429/145, outlines a number of prohibited practices on the part of debt settlement providers.

72.     225 ILCS 429/145(1) provides that a debt settlement provider shall not "[c]harge or collect from a consumer any fee not permitted by, in an amount in excess of the maximum amount permitted by, or at a time earlier than permitted by Section 125 of [the IDSCPA]."

73.     Defendant violated the above provision of the IDSCPA through the nature of its billing practices.

74.     225 ILCS 429/145(2) provides that a debt settlement provider shall not "[a]dvise or represent, expressly or by implication, that consumers should stop making payments to their creditors, lenders, loan servicers, or loan guarantors or government entities."

75.     Defendant violated the above provision of the IDSCPA through its explicit and implicit instructions that Plaintiffs should cease making payments in connection with their enrolled obligations.

76.     225 ILCS 429/145(3) provides that a debt settlement provider shall not "[a]dvise or represent, expressly or by implication, that consumers should stop communicating with their creditors, lenders, loan services, loan guarantors, or attorneys or government entities."

77.     Defendant violated the above provision of the IDSCPA through its explicit and implicit representations that Plaintiffs should stop communicating with their creditors and instead divert those communications to Defendant.

78.     225 ILCS 429/145(12) provides that a debt settlement provider shall not enter into a contract with a consumer without providing the requisite disclosures and engaging in the requisite financial analysis required by the IDSCPA.

79.     Defendant violated the above provisions of the IDSCPA by contracting with Plaintiffs despite failing to provide the requisite disclosures.

80.     225 ILCS 429/145(13) provides that a debt settlement provider shall not "misrepresent any material fact, make a material omission, or make a false promise directed to one or more consumers in connection with the solicitation, offering, contracting, or provision of debt settlement services." Similarly, 225 ILCS 429/145(17) provides that a debt settlement provider shall not "employ an unfair, unconscionable, or deceptive act or practice, including the knowing omission of any material information."

81.     Defendant violated the above provisions of the IDSCPA in much the same way it violated the numerous provisions of the CROA outlined above.

82.     225 ILCS 429/125(18) provides that no debt settlement provider shall "engage in any practice that prohibits or limits the consumer or any creditor from communication directly with one another."

83.     Defendant violated the above provision of the IDCSPA through its conduct in preventing Plaintiffs from interacting directly with their creditors.

**WHEREFORE**, Plaintiffs respectfully request the following relief:

a.     Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b.     Awarding Plaintiffs' actual damages pursuant to 225 ILCS 429/155(b) and 815 ILCS 505/10a;

c.     Awarding Plaintiffs' punitive damages pursuant to 225 ILCS 429/155(b) and 815 ILCS 505/10a;

d.     Awarding Plaintiffs' costs and reasonable attorney fees, pursuant to 225 ILCS 429/155(b) and 815 ILCS 505/10a ; and,

e.     Awarding any other relief the Honorable Court deems just and appropriate.

## COUNT IV – VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT

84.     Plaintiffs repeat and reallege all preceding paragraphs as though fully set forth herein.

85.     Plaintiffs are "any person[s]" as defined by 815 ILCS 505/10a(a).

86.     Defendant's services and conduct constitute "trade" and "commerce" as defined by 815 ILCS 505/1(f) of the ICFA.

87.     The ICFA states:

"Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby."
815 ILCS 505/2.

88.     Defendant violated the ICFA through its unfair and deceptive conduct it engaged in connection with the manner in which it represented its services to Plaintiffs and subsequently provided services to Plaintiffs, outlined at length above. Defendant engaged in a series of unfair, fraudulent, and deceptive conduct, with such conduct causing Plaintiffs significant and extensive damages, both pecuniary and non-pecuniary in nature.

89.     Furthermore, violations of the IDSCPA constitute violations of the ICFA. See 225 ILCS 429/155(a).

**WHEREFORE**, Plaintiffs respectfully request the following relief:

a.      Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b.      Awarding Plaintiffs' actual and punitive damages, in an amount to be determined at trial, for the underlying violations;

c.      Awarding Plaintiffs' costs and reasonable attorney fees;

d.      Awarding any other relief as this Honorable Court deems just and appropriate.

## COUNT V – FRAUD

90.     Plaintiffs repeat and reallege all preceding paragraphs as though fully set forth herein.

91.     The elements of fraud are: (1) a factual representation or, where there is a duty to disclose, concealment of a fact; (2) which was untrue; (3) made with knowledge of its falsity or made recklessly without caring whether it was true or false; (4) made with the intent to defraud and to induce another to act upon it; and (5) the Plaintiff[s] believed the statement to be true and relied on it to his/her detriment.

92.     Defendant committed fraud by falsely representing to Plaintiffs that (1) it would expeditiously resolve their debts; (2) improve their credit scores; and (3) it resolved four (4) of Plaintiffs debts when in reality it did not settle any of Plaintiffs' debts.

93.     Defendant knew that its debt resolution program cannot possibly improve Plaintiffs' credit scores as it requires Plaintiffs to stop making payments to their creditors, which will in turn decrease Plaintiffs' credit scores.

94.     Plaintiffs detrimentally relied on the representations by enrolling in Defendant's debt resolution/credit improvement program and making payments into the program.

95.     Despite making payments into Defendant's debt resolution/credit improvement program, Defendant failed to settle any of Plaintiffs' debts or improve Plaintiffs' credit scores.

96.     As alleged above, Plaintiffs were severely harmed by Defendant's actions and inaction.

**WHEREFORE**, Plaintiffs respectfully request the following relief:

a.      A judgment in Plaintiffs' favor for fraud;

b.      Awarding Plaintiffs actual and punitive damages, in an amount to be determined at trial;

c.      Awarding Plaintiffs their reasonable attorney's fees and costs; and

d.      Awarding any other relief as this Honorable Court deems just and appropriate.

## COUNT VI –NEGLIGENT MISREPRESENTATION

97.     Plaintiffs repeat and reallege all preceding paragraphs as though fully set forth herein.

98.     The tort of negligent misrepresentation has four elements: (1) a duty of care or voluntary assumption of a duty on the part of the Defendant; (2) a breach of that duty, i.e., failure

to exercise ordinary care in making the representation or in ascertaining the facts; (3) a causal link between the conduct and the injury; and (4) actual loss or damage as a result of the injury.

99.     Defendant made negligent misrepresentations through its conduct in promising Plaintiffs that it would (1) promptly communicate with Plaintiffs' enrolled creditors, (2) efficiently settle Plaintiffs' enrolled debts, and (3) improve Plaintiffs' credit score.

100.    Further, Defendant implicitly and/or explicitly represented to Plaintiffs that its services would improve Plaintiffs' credit scores when it knew that Plaintiffs' credit scores would decrease due to missed payments.

101.    Plaintiffs heavily relied on all of the aforementioned false statements to their detriment.

102.    As alleged above, Plaintiffs were severely harmed by Defendant's actions and inaction.

**WHEREFORE**, Plaintiffs respectfully request the following relief:

a.      A judgment in Plaintiffs' favor for negligent misrepresentation;

b.      Awarding Plaintiffs actual and punitive damages, in an amount to be determined at trial;

c.      Awarding Plaintiffs' reasonable attorney fees and costs; and

d.      Awarding any other relief as this Honorable Court deems just and appropriate.

## COUNT VII – LEGAL MALPRACTICE

103.    Plaintiffs repeat and reallege all preceding paragraphs as though fully set forth herein.

104.    To establish a cause of action for legal malpractice based on negligence, a Plaintiffs must prove the following elements: (1) duty - an attorney owed a duty of care to client,

(2) breach of duty -breached that duty by failing to act in accordance with the standard of care; (3) causation - he breach was the proximate cause of the plaintiff's damages, meaning that the outcome of the legal matter would have been different but for the attorney's negligence; and (4) damages - The plaintiff suffered actual harm as a result of the attorney's malpractice."

105.    Plaintiffs and Defendant entered into an attorney-client relationship on June 24, 2021, upon Plaintiffs executing a Client Retainer Agreement with Defendant in which Defendant agreed to provide legal representation and debt resolution services to Plaintiffs.

106.    Defendant owed a professional duty to Plaintiffs as a result of this contractual relationship, specifically to negotiate with Plaintiffs' creditors and provide other legal services.

107.    The professional duty requires the attorney to exercise that degree of care, skill, and judgment which is usually exercised under like or similar circumstances by lawyers licensed to practice in this state.

108.    Defendant breached its duties as set forth in the Client Retainer Agreement by, *inter alia*, (1) failing to promptly communicate with Plaintiffs' enrolled creditors, (2) failing to resolve any of Plaintiffs' enrolled debts, and (3) failing to improve Plaintiffs' credit score.

109.    As set forth above, Defendant failed to resolve any of Plaintiffs' debts despite having adequate funds to resolve Plaintiffs' debts.

110.    As set forth above, Plaintiffs suffered damages as a result of Defendant's legal malpractice.

**WHEREFORE**, Plaintiffs respectfully request the following relief:

a.    A judgment in favor of Plaintiffs for legal malpractice;

b.    Awarding Plaintiffs actual damages;

c.    Award Plaintiffs punitive damages; and,

d.      Awarding any other relief as this Honorable Court deems just and appropriate.

<u>**COUNT VIII – BREACH OF CONTRACT**</u>

111.    Plaintiffs repeat and reallege all preceding paragraphs as though fully set forth herein.

112.    The contract for debt settlement services between Plaintiffs and Defendant is a valid and enforceable contract.

113.    The elements of breach of contract are (1) a legally enforceable obligation of a Defendant to a Plaintiffs; (2) the Defendant's violation or breach of that obligation; and (3) injury or damage to the Plaintiffs caused by the breach of obligation.

114.    Defendant breached its contract with Plaintiffs by, *inter alia*,  (1) failing to pay Plaintiffs' creditors with the funds that Plaintiffs paid into the debt settlement program; (2) failing to provide debt settlement services to the best of its ability in an effort effectuate reasonable settlements; (3) failing to promptly communicate with Plaintiffs' creditors in an effort resolve Plaintiffs' debts; (4) pocketing unearned fees and fees not authorized by the contract; and (5) putting its financial interests ahead of Plaintiffs' interests.

115.    As set forth above, Plaintiffs suffered damages as a result of Defendant's breach of contract.

**WHEREFORE**, Plaintiffs respectfully request the following relief:

a.      A judgment in favor of Plaintiffs for legal malpractice;

b.      Awarding Plaintiffs compensatory damages;

c.      Awarding Plaintiffs punitive damages; and,

d.      Awarding any other relief as the Honorable Court deems just and appropriate.

## COUNT VIIII – BREACH OF FIDUCIARY DUTY

116.    Plaintiffs restate and reallege all previous paragraphs as though fully set forth herein.

117.    Defendant owed Plaintiffs a fiduciary duty arising out of the nature of this relationship.

118.    Defendant owed Plaintiffs a fiduciary duty because Plaintiffs reposed a special confidence in Defendant and Defendant was bound to act in good faith and with due regard of Plaintiffs.

119.    Specifically, Plaintiffs entrusted Defendant with their money and to use their money in a responsible manner to settle their debts.

120.    Defendant breached its fiduciary duty to Plaintiffs by, *inter alia*, (1) failing to pay Plaintiffs' creditors with the funds that Plaintiffs paid into the debt settlement program; (2) failing to provide debt settlement services to the best of its ability in an effort effectuate reasonable settlements; (3) failing to communicate with Plaintiffs' creditors in an effort resolve Plaintiffs' debts; (4) pocketing unearned fees and fees not authorized by the contract; and (5) putting its financial interests ahead of the interests of Plaintiffs.

121.    As set forth above, Plaintiffs suffered damages as a result of Defendant's conduct.

**WHEREFORE**, Plaintiffs respectfully request the following relief:

a.    A judgment in Plaintiffs' favor for breach of fiduciary duty;

b.    Awarding Plaintiffs actual damages;

c.    Award Plaintiffs punitive damages;

d.    Award Plaintiffs reasonable attorney's fees and costs;

e.    Awarding any other relief as the Honorable Court deems just and appropriate.

Dated: May 22, 2025                                    Respectfully submitted,


*/s/ Alexander J. Taylor*
Alexander J. Taylor, Esq.
*Counsel for Plaintiff*
Sulaiman Law Group, Ltd.
2500 South Highland Ave.,
Suite 200
Lombard, Illinois 60148
(630) 575-8181 (phone)
(630) 575-8188 (fax)
ataylor@sulaimanlaw.com

21